**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

FULVIO FLETE-GARCIA,

    *Plaintiff*,

  v.

U.S. DEPARTMENT OF JUSTICE,[1]

    *Defendant*.

Civil Action No. 19-2382 (RDM)

---

## <u>MEMORANDUM OPINION AND ORDER</u>

In the summer of 2019, Plaintiff Fulvio Flete-Garcia sought to file five Freedom of Information Act ("FOIA") requests with Defendant the Department of Justice, Executive Office for the United States Attorneys ("EOUSA"). Dkt. 1 at 2–3 (Compl.); *see also* 5 U.S.C. § 552. After EOUSA failed to respond to any of his requests. Plaintiff brought this action.  EOUSA now moves to dismiss, or in the alternative, for summary judgment.  Dkt. 20.  Although Plaintiff has failed to respond to that motion, the Court must nonetheless determine for itself whether the undisputed material facts support granting summary judgment in favor of EOUSA.  *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508–09 (D.C. Cir. 2016).

For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part EOUSA's motion.

---

[1] Plaintiff names both the Department of Justice and EOUSA as defendants, but "the Department of Justice, as the parent agency of EOUSA . . . is the proper defendant in this FOIA case." *Corley v. Sessions*, 280 F. Supp. 3d 164, 166 n.2 (D.D.C. 2017).

# I. BACKGROUND

## A.    Factual Background

Plaintiff, a federal prisoner who is proceeding *pro se*, seeks records related to the court proceedings leading up to his criminal conviction.  Because Plaintiff has not responded to EOUSA's motion, let alone offered evidence controverting its factual allegations, the Court relies primarily on EOUSA's statement of undisputed material facts, Dkt. 20-1 (SUMF), and the declaration of Natasha Hudgins, an Attorney-Advisor with the EOUSA component that administers FOIA, Dkt. 25-1 at 1 (Hudgins Decl. ¶ 1).  *See* Fed. R. Civ. P. 56(c)(1) (establishing that "[a] party asserting that a fact cannot be or is genuinely disputed must support th[at] assertion"); *Husain v. Barsa*, No. 15-708, 2021 WL 663206, at *1 (D.D.C. Feb. 19, 2021) (relying on the defendant's statement of undisputed material facts because the plaintiff had not controverted them in her opposition).  The Court, however, also relies on the documents attached to Plaintiff's complaint, the authenticity of which EOUSA does not dispute.

### 1.    *Request No. 1*

On June 12, 2019, Plaintiff mailed a FOIA request to EOUSA seeking "a complete copy of the discovery related to" the criminal case brought against him by the United States in the U.S. District Court for the District of Massachusetts. Dkt. 1-1 at 2–4 (Compl. Ex. 1).  EOUSA acknowledged receipt of this request on June 19, 2019 and assigned it a tracking number.  Dkt. 20-1 at 1 (SUMF ¶ 4).  On July 18, 2019, EOUSA wrote to Plaintiff, advising him that his request concerned "material previously requested" from EOUSA and that, as a result, EOUSA was treating the request "as a duplicate of" his earlier request (which is not at issue in this litigation). Dkt. 25-1 at 11 (Hudgins Decl. Ex. B).  Although the letter also stated (in some

tension with that determination) that EOUSA would release "[a]ll non-exempt responsive

records . . . as soon as practicable," the letter concluded as follows:

> This is the final action on this above-numbered request.  If you are not satisfied
> with [the] response to this request, you may administratively appeal by writing
> to the Director, Office of Information Policy (OIP), United States Department
> of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-
> 0001, or you may submit an appeal through OIP's FOIAonline portal by creating
> an account on the [designated] web site. . . .   Your appeal must be postmarked
> or electronically transmitted within ninety (90) days of the date of my response
> to your request. . . .
>
> You may contact our FOIA Public Liaison at the telephone number listed above
> for any further assistance and to discuss any aspect of your request. . . . .

*Id*. at 12 (Hudgins Decl. Ex. B).  Plaintiff never filed an administrative appeal, and the duplicate

FOIA request is the subject of litigation in another FOIA lawsuit that Plaintiff is pursuing.  *Id.* at

3 (Hudgins Decl. ¶¶ 9–10).

        2.       *Request Nos. 2, 3, and 5*

      According to EOUSA, it has no record of Request Nos. 2, 3, and 5, and it thus did not

process or respond to any of those requests.  The undisputed evidence shows the following:

      Request No. 2, a copy of which is attached to Plaintiff's complaint, is dated June 21,

2019.[2]  Dkt. 1-1 at 7–8 (Compl. Ex. 2).  That request sought various written, audio, and video

records relating to his criminal case before the U.S. District Court for the District of

Massachusetts.  *Id.*  Also attached to the complaint is a U.S. Postal Service Certified Mail

Receipt, showing that Plaintiff mailed this FOIA request to "United States Attorneys' Office,

U.S. Department of Justice, 600 E Street, NW, Room 7300, Washington, D.C. 20530" on June

25, 2019.  *Id.* at 10 (Compl. Ex. 2).  The Return Receipt, which contains the same item number,

---

[2] The date following Plaintiff's signature reads "June 21, 2015," in contrast to the date at the top
of the letter, Dkt. 1-1 at 7–8 (Compl. Ex. 2), but Plaintiff alleges that the letter was sent in 2019,
Dkt. 1 at 2 (Compl.).

reflects that the request was sent to "U.S. Department of Justice, Office of Executive Attorney" at the same address reflected above, and it shows that the mailing was signed for on July 1, 2019. *Id.* at 11 (Compl. Ex. 2). The surname of the signatory is apparently "Sase" or "Sass." *Id.*

A copy of Request No. 3 is also attached to the complaint, and that request is dated June 24, 2019. *Id.* at 13–14 (Compl. Ex. 3). This request sought the following materials:

> (1)    All orders that reflect the [c]ommencement, [t]ermination, and any extensions of the [g]rand [j]ury[] that heard evidence in this matter;
>
> (2)    Transcripts of the instructions and charges given to any [g]rand [j]ury that heard evidence in this matter;
>
> (3)    All [g]rand [j]ury voting records from all [g]rand [juries] that heard evidence in this matter; and[]
>
> (4)    All [g]rand [j]ury attendance records including names, times, and dates, of all [g]rand [j]urors that heard evidence in this matter.

*Id.* at 13 (Compl. Ex. 3). Plaintiff also requested "a copy of the applicable rules and regulations of" EOUSA, "as provided for the FOIA/[Privacy Act]." *Id.* As with Request No. 2, the Certified Mail Receipt shows that the request was sent on June 25, 2019. *Id.* at 16 (Compl. Ex. 3). But, unlike Request No. 2, this receipt shows that the request was sent to "EOUSA—Dept. of Justice, 175 N Street, NE, Washington, D.C. 20530." *Id.* The Return Receipt uses this same address, but adds a reference to the "3CON BLDG." *Id.* at 17 (Compl. Ex. 3). That receipt shows that the request was signed for on July 1, 2019 by the same individual who signed for Request No. 2, and, indeed, the signature appears to be a stamp that was used in both cases. *Id.*

Finally, a copy of Request No. 5 is also attached to the complaint. *Id.* at 25 (Compl. Ex. 5). This request is nearly identical to Request No. 3, but it seeks records relating to a superseding indictment against Plaintiff, with a different indictment number: 15-cr-10381. *Id.* As with Request No. 3, the request itself (as opposed to the envelop or receipts) includes the

following address: "Executive Office for United States Attorneys, Department of Justice, 175 N

Street, NE, Room 5400, 3 CON BLDG, Washington, D.C.  20530."  *Id.*  Plaintiff has not

provided the Court with a copy of his Certified Mail Receipt, but the Return Receipt refers to

"EOUSA—Dept. of Justice, 175 N Street, NE, 3 CON BLDG, Washington, D.C. 20530."  *Id.* at

26 (Compl. Ex. 5).  The receipt bears the same signature as that used to acknowledge receipt of

Requests Nos. 2 and 3, and it shows that the item was received on July 2, 2019.  *Id.*

According to the Hudgins declaration, "EOUSA does not have a record of receiving these

three FOIA requests."  Dkt. 25-1 at 4 (Hudgins Decl. ¶ 14).  Hudgins further explains that

members of the pubic may submit FOIA requests to EOUSA either online or by mailing their

requests "to EOUSA [at] 175 N Street, NE, Suite 5400, Washington, D.C.  20530-0001."  *Id.*

(Hudgins Decl. ¶ 16).  "All mail to EOUSA goes through two screening locations before being

distributed to the proper office," and "[c]ertified mail is signed for outside of the EOUSA FOIA

office."  *Id.* at 5 (Hudgins Decl. ¶ 18).  EOUSA's mail logs, which "track[] all incoming mail

received in the FOIA/PA office," contain no reference to Request Nos. 2, 3 or 5.  *Id.* (Hudgins

Decl. ¶¶ 19–20).

3.    *Request No. 4*

Request No. 4 sought the same grand jury materials and regulations as Request Nos. 3

and 5, but for the "[o]riginal [i]ndictment" associated with "indictment [number] 15-cr-10381."

Dkt. 1-1 at 19 (Compl. Ex. 4).  It was mailed to the same address as Request Nos. 3 and 5, and it

was signed for by the same individual.  *Id.* at 19–23 (Compl. Ex. 4).  It arrived, however, the day

before Request No. 5 arrived, *compare id.* at 23 (Compl. Ex. 4) *with id.* at 26 (Compl. Ex. 5),

and, mysteriously, it—unlike Requests No. 3 and 5—was received by EOUSA's FOIA office

and was processed.  Dkt. 25-1 at 3–4 (Hudgins Decl. ¶ 11).

In late July 2019,[3] EOUSA sent Plaintiff a final response to the request, asserting that "any records responsive to [his] request for grand jury material are exempt pursuant to[] 5 U.S.C. § 552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings)." *Id.* at 16 (Hudgins Decl. Ex. D). EOUSA further noted that the grand jury orders related to Plaintiff's case were sealed by the court. *Id.* Even though EOUSA asserted that this letter represented the "final action" with respect to Plaintiff's request and provided the same instructions for administrative appeal previously described, the letter also said that the "EOUSA [was] conducting a search for all other records requested." *Id.* It is not clear if EOUSA was referring to the copy of "applicable rules and regulations" that Plaintiff sought or if it was referring to other pending FOIA requests from Plaintiff, or if the sentence was accidentally included. In any event, EOUSA offers no evidence that it released any records in response to Request No. 4.

Plaintiff filed an administrative appeal, and in a letter dated December 12, 2019, the Office of Information Policy ("OIP") "affirmed EOUSA's determination that the materials requested were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3)." Dkt. 20-1 at 2–3 (SUMF ¶ 13); Dkt. 25-1 at 18–19 (Hudgins Decl. Ex. E). Echoing the reasoning of EOUSA, OIP explained that "[b]ecause any such records responsive to [Plaintiff's] request would be categorically exempt from disclosure [under Federal Rule of Criminal Procedure 6(e)], EOUSA was not required to conduct a search for the requested records." Dkt. 25-1 at 18 (Hudgins Decl. Ex. E). OIP's decision, like EOUSA's response, failed to mention Plaintiff's request for a copy

---

[3] Although Hudgins asserts that this response was sent on or about July 18, 2019, Dkt. 25-1 at 4 (Hudgins Decl. ¶ 12), the letter is dated July 30, 2019, *id.* at 16 (Hudgins Decl. Ex. D).

of the applicable rules and regulations of EOUSA, "as provided for the FOIA/PA Acts." *Id.*;
Dkt. 1-1 at 19 (Compl. Ex.4).

## B.    Procedural Background

Plaintiff filed this action on August 6, 2019.  Dkt. 1 (Compl.).[4]  For each of the five
FOIA requests, he alleges that at least 20 days have elapsed since his filing the request and that,
with respect to each request, EOUSA has not responded.  *Id.* at 2–3 (Compl.).  On March 6,
2020, EOUSA moved to dismiss or for summary judgment, arguing that each of Plaintiff's
claims (corresponding to each of these FOIA requests) fails, albeit for varying reasons:
Plaintiff's claim with respect to Request No. 1 fails, according to EOUSA, because Plaintiff
never exhausted his administrative remedies; his claims with respect to Request Nos. 2, 3, and 5
fail because EOUSA never received them; and his claim with respect to Request No. 4 fails
because EOUSA properly withheld records pursuant to Exemption 3 of FOIA and Federal Rule
of Criminal Procedure 6(e).  *See generally* Dkt. 20.[5]

On March 9, 2020, the Court issued a *Fox/Neal* order instructing Plaintiff to respond to
EOUSA's motion on or before April 10, 2020.  Dkt. 21.  On May 14, 2020, Plaintiff alerted the
Court that he had been transferred to a different prison; that he had been "on [a] COVID[-]19

---

[4]  Although Plaintiff styles his complaint as a "petition for preliminary injunction," Dkt. 1 at 1
(Compl.), the Court and EOUSA have treated the filing as Plaintiff's complaint, and the Court
will continue to do so here.  (Plaintiff subsequently filed a motion for preliminary injunction,
which the Court denied as premature and which Plaintiff has not renewed.  Dkt. 6; Minute Order
(Dec. 5, 2019)).  In any event, Plaintiff has not shown irreparable injury and would therefore not
prevail on a motion for preliminary injunction, if the complaint were treated as such.  *See Flete-
Garcia v. U.S. Marshals Serv.*, No. 18-2442, __F. Supp. 3d__, 2020 WL 1695127, at *2 n.1.

[5]  EOUSA seems to confuse the request numbers in the headings of its brief, which state that
Request No. 5 is exempt from disclosure and that Request Nos. 2, 3, and 4 were never received.
Dkt. 20 at 8, 10.  The Court assumes, based on the substance of EOUSA's arguments, that it
intends to argue that Request No. 4 is exempt, and that Request Nos. 2, 3, and 5 were never
received.

prevention lockdown for around 30 days;" and that these conditions were "a big obstacle for [him] to timely and properly file the brief and appendix for [his] case records."  Dkt. 23 at 2. The Court, accordingly, extended the deadline for Plaintiff to respond until July 1, 2020.  Minute Order (June 5, 2020).  Subsequently, EOUSA notified the Court that it could not confirm that it had served the Hudgins declaration on Plaintiff, a suspicion raised by EOUSA's failure to file a copy of the declaration with the Court.  Dkt. 25.  EOUSA, then, filed and served the declaration, and the Court extended Plaintiff's time to respond until July 21, 2020.  Minute Order (June 25, 2020).  Having received no response from Plaintiff by August 18, 2020, the Court *sua sponte* extended his time to respond until September 15, 2020. Minute Order (Aug. 18, 2020).

Over a year has now passed since EOUSA filed its motion (and over nine months have passed since EOUSA served the Hudgins declaration), and Plaintiff has yet to file a response.

## II.  LEGAL STANDARD

EOUSA moves for dismissal or, in the alternative, for summary judgment.  On a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 570.

FOIA cases are more frequently resolved on motions for summary judgment.  *See Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016).  To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a).  "In a FOIA action, the Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe ' . . . the justifications for nondisclosure [of records] with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Thomas v. FCC*, 534 F. Supp. 2d 144, 145 (D.D.C. 2008) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 728 (D.C. Cir. 1981)).  The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action.  5 U.S.C. § 552(a)(4)(B).

## III.  ANALYSIS

### A.    Request No. 1

The Court begins with Plaintiff's claim regarding Request No. 1.  EOUSA maintains that this claim fails as a matter of law because Plaintiff failed to exhaust his administrative remedies, as required under FOIA.  Dkt. 20 at 7.  The Court agrees.

"Under FOIA, an agency generally must notify a requester of its 'determination and the reasons therefore' within 20 business days of receiving the request."  *Khine v. DHS*, 943 F.3d 959, 964 (D.C. Cir. 2019) (quoting 5 U.S.C. § 552(a)(6)(A)(i)).  "If the agency meets the 20-day deadline[,] . . . then the 'requester is required to administratively appeal that determination before bringing suit.'"  *Id.* (quoting *Crew v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013)); *see also Ogelsby v. U.S. Dep't of Army*, 920 F.2d 57, 61–62  (D.C. Cir. 1990) ("Courts have consistently confirmed that . . . FOIA requires exhaustion of [the administrative] appeal process before an individual may seek relief in the courts.").  Moreover, even if the agency does not timely respond, so long as it responds before the FOIA requester files suit, the requester must exhaust administrative remedies.  *Ogelsby*, 920 F.2d at 63–64.

"Although exhaustion of a FOIA request 'is not jurisdictional because the FOIA does not unequivocally make it so,' . . . still 'as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar.'" *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003)).  The key inquiry is whether "permitting [the plaintiff] to pursue judicial review without benefit of prior [agency] consideration would undercut 'the purposes of exhaustion, namely, preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [or] compil[ing] a record which is adequate for judicial review.'" *Hidalgo*, 344 F.3d at 1259 (quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993)).  "[W]hen a court concludes that (1) a plaintiff has failed to exhaust his administrative remedies; and (2) reviewing his claim would undermine the purposes of exhaustion, the court should dismiss the claim under Federal Rule of Civil Procedure 12(b)(6)."  *Hull v. United States Attorney*, 279 F. Supp. 3d 10, 13 (D.D.C. 2017); *see also Bayala v. DHS, Office of Gen. Counsel*, 827 F.3d 31, 35 n.1 (D.C. Cir. 2016); *Hidalgo*, 344 F.3d at 1260.

Here, the uncontroverted record shows that EOUSA responded to Request No. 1 "within twenty business days (June 19, 2019 to July 18, 2019, not counting July 4, 2019), in accordance with 5 U.S.C. § 552(a)(6)(A)(i)."  Dkt. 20 at 7.  And, in any event, EOUSA responded to Plaintiff's FOIA request before Plaintiff brought this action.  Plaintiff was, therefore, required to exhaust his administrative remedies before bringing suit.  *Ogelsby*, 920 F.2d at 63–64.  The Court is unaware of any circumstances, moreover, that might justify disregarding the exhaustion requirement in this case.  The only possibility that occurs to the Court is that Plaintiff might have been misled by EOUSA's response, which rejected Request No. 1 as duplicative but also

indicated that the office would release "[a]ll non-exempt responsive records . . . as soon as practicable."  Dkt. 25-1 at 11 (Hudgins Decl. Ex. B).  The Court is thus left to wonder whether, perhaps, Plaintiff did not appeal because he was waiting for EOUSA to release those records.

This possibility, however, offers insufficient basis to deny EOUSA's motion for two reasons.  First, and most importantly, Plaintiff has had ample opportunity to respond to EOUSA's motion for summary judgment and, in particular, to its exhaustion defense, yet he has failed to do so.  Under those circumstances, the Court should not be left to guess about whether Plaintiff might have been misled; if he was misled, he could have, and should have, submitted a declaration explaining what happened and why he did not appeal.  Second, when read in context, EOUSA's denial of his claim would not have confused a reasonable person.  EOUSA told Plaintiff that its decision was final, and it explained that Plaintiff would need to lodge any administrative appeal within 90 days.  That was enough to put Plaintiff on clear notice of his obligation to exhaust administrative remedies before bringing suit.

The Court will, accordingly, grant summary judgment in favor of EOUSA with respect to Request No. 1.

**B.     Request Nos. 2, 3, and 5**

EOUSA contends that it is also entitled to prevail with respect to Request Nos. 2, 3, and 5 because it never received those requests.  Dkt. 20 at 10–11.  "An agency's disclosure obligations [under FOIA] are not triggered . . . until it has received a proper FOIA request in compliance with its published regulations."  *Mitchell v. Samuels*, 160 F. Supp. 3d 8, 11 (D.D.C. 2016) (quoting *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C. 2008)).  More specifically, the twenty-day period for an agency to respond begins to run "on the date on which the request is first received by the appropriate component of the agency, but in any event not

later than ten days after the request is first received by any component of the agency that is

designated in the agency's regulations under [FOIA] to receive requests."  5 U.S.C.

§ 552(a)(6)(A)(ii).  "If no FOIA request is received, an agency has no reason to search" for or to

produce records.  *Mitchell*, 160 F. Supp. 3d at 12; *see also West v. Jackson*, No. 6-5281, 2007

WL 1723362, at *1 (D.C. Cir. Mar. 6, 2007) (per curiam); *Banks v. Lappin*, 539 F. Supp. 2d 228,

235 (D.D.C. 2008); *Schoenman v. FBI*,  No. 04-2202, 2006 WL 1126813, at *13 (D.D.C. Mar.

31, 2006); *Hutchins v. Dep't of Justice*, No. 00-2349, 2005 WL 1334941, at *1–2 (D.D.C. June

6, 2005).  A FOIA requester must offer evidence "sufficient to establish the existence of an

element essential to his case (*i.e.*, proper filing and receipt) to survive [a] dispositive motion[]."

*Schoenman*, 2006 WL 1126813, at *13.

    Here, Plaintiff has done all one might reasonably ask of a FOIA requester, at least with

respect to Request Nos. 3 and 5: he has submitted documentary evidence showing that the

requests were, in fact, mailed to "EOUSA" at the correct address (175 N Street, NE), Dkt. 1-1 at

16–17 (Compl. Ex. 3); *id.* at 26 (Compl. Ex. 5); *see also* Dkt. 25-1 at 4 (Hudgins Decl. ¶ 16)

(agreeing that this is the correct address), and that the mailings were signed for upon receipt,

Dkt. 1-1 at 17 (Compl. Ex. 3); *id.* at 26 (Compl. Ex. 5).  EOUSA, for its part, answers that

"EOUSA staff checked the mail logs" for its FOIA/PA office and were "unable to locate any

correspondence from Plaintiff regarding these . . . requests."  Dkt. 25-1 at 5 (Hudgins Decl.

¶ 20).  But that still leaves an evidentiary gap.

    The uncontroverted evidence establishes only the following facts: (1) that the FOIA

requests were properly addressed and that they, in fact, arrived at one of the "screening

locations" used by EOUSA for processing its mail, *id.* (Hudgins Decl. ¶ 18), and (2) that the

requests were never entered into the EOUSA FOIA logs, *id.* (Hudgins Decl. ¶¶ 19–20).  What

the Court cannot discern on the present record is whether the requests never made it to EOUSA—that is, the "component of the agency that is designated in the agency's regulations under [FOIA] to receive requests," 5 U.S.C. § 552(a)(6)(A)(ii)—or whether they were delivered to EOUSA but never made it into the EOUSA FOIA log.  The fact that two (and perhaps three) requests that Plaintiff submitted were *all* lost adds to the mystery and raises questions about the procedures the Department of Justice and EOUSA employ for purposes of receiving and logging incoming FOIA requests.  Notably, EOUSA offers very little information about what *did* happen—or, indeed, even about what *might* have happened—here.  It does not identify who signed for the mailings, and it did not, as far as the Court can discern, investigate what happened to the requests, beyond merely concluding that they were never logged.  EOUSA also says nothing about who is responsible for ensuring that mail received at the screening location is delivered to the appropriate component.  Without additional information—and perhaps an evidentiary hearing—the Court cannot conclude that EOUSA has carried its summary judgment burden of demonstrating that there is no material issue in dispute.[6]

Granted, it seems unlikely that EOUSA would have released the information sought by Plaintiff in Request Nos. 3 and 5, even if those requests had been received; presumably, EOUSA would have denied the requests on the same grounds that it denied Request No. 4, which sought the same grand jury materials, albeit for a different indictment number.  But EOUSA has not

---

[6]  To be sure, Plaintiff's failure to oppose EOUSA's motion means that the Court must accept all reasonably supported and uncontroverted facts proffered by EOUSA.  *Neal v. Kelly*, 963 F.2d 453, 456–57 (D.C. Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).  But, the only relevant fact that EOUSA proffers is that it lacks a record of receiving the mailings; it does not, and based on the record before the Court, cannot, make the affirmative representation that it never actually received the mailings.  Another question not answered by the briefing to date is whether the individual who signed for the mailings served as EOUSA's agent, such that the requests should be deemed received by EOUSA.

argued that a rule akin to the rule of prejudicial error applies under FOIA, and the Court can decide only the question that is before it based on the record that it is before it.  The Court will, accordingly, deny EOUSA's motion for summary judgment with respect to Request Nos. 3 and 5.

This, then, leaves Request No. 2.  The difficulty with respect to this request is that it was at least arguably misaddressed, thus providing some explanation for why the request was never logged.  Although that may well explain what happened, the Court will refrain from granting summary judgment in favor of EOUSA with respect to this claim because, while plausible, this is not the defense EOUSA has presented, and the Court cannot determine on the present record whether the address that Plaintiff used was sufficient.  It is not the Court's role, for example, to search Department of Justice directories to see which office, if any, is located at 600 E Street, NW, Room 7300.  And, again, EOUSA does nothing to address what actually happened to this mailing, which was apparently signed for by a Department of Justice representative.  The Court will, accordingly, deny EOUSA's motion for summary judgment with respect to Request No. 2 as well.

## C.    Request No. 4

Finally, EOUSA claims that "[a]ll of the grand jury materials requested by Plaintiff [in Request 4] were appropriately deemed exempt by EOUSA" pursuant to FOIA Exemption 3. Dkt. 20 at 9; 5 U.S.C. § 552(b)(3).  In relevant part, Exemption 3 protects information that is "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,"  5 U.S.C. § 552(b)(3).  Here, EOUSA claims that Federal Rule of Criminal Procedure 6(e) is a qualifying statute that shields "'matter[s] occurring before a grand jury.'"  Dkt. 20 at 8 (quoting *Labow v.*

*Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016)); *see also* Fed. R. Crim. P. 6(e).  The Court

agrees.  As the D.C. Circuit has explained, Rule 6(e)'s "ban on disclosure is for FOIA purposes

absolute and" leaves no discretion on the issue.  *Fund for Const. Gov't v. Nat'l Archives & Recs.*

*Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981).

"Consequently, the sole question before [the Court] is whether the documents withheld

from disclosure fall within Rule 6(e)."  *Labow*, 831 F.3d at 529.  That question, however,

requires a more detailed, case-specific analysis than the categorial responses offered by EOUSA

and OIP.  Instead, to determine whether information related to a grand jury is protected by Rule

6(e) and Exemption 3, the Court must consider "whether disclosure of the information requested

would 'tend to reveal some secret aspect of the grand jury's investigation, such matters as the

identities of witnesses or jurors, the substance of testimony, the strategy or direction of the

investigation, the deliberations or questions of jurors, and the like.'"  *Lopez v. Dep't of Justice*,

393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting *Senate of the Commonwealth of Puerto Rico v.*

*Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)); *see also Murphy v. EOUSA*, 789 F.3d 204,

206 (D.C. Cir. 2015); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013); 1 Charles Alan Wight

& Arthur R. Miller, Federal Practice and Criminal Procedure § 106 (4th ed. 2020) (hereinafter

Wright & Miller).  In addressing this question, moreover, the Court must bear in mind the

justifications for grand jury secrecy—that is:

> (1) To prevent the escape of those whose indictment may be contemplated; (2)
> to insure the utmost freedom to the grand jury in its deliberations, and to prevent
> persons subject to indictment or their friends from importuning the grand jurors;
> (3) to prevent subornation of perjury or tampering with the witnesses who may
> testify before [the] grand jury and later appear at the trial of those indicted by it;
> (4) to encourage free and untrammeled disclosures by persons who have
> information with respect to the commission of crimes; [and] (5) to protect [an]
> innocent accused who is exonerated from disclosure of the fact that he has been
> under investigation, and from the expense of standing trial where there was no
> probability of guilt.

*United States v. John Doe, Inc. I*, 481 U.S. 102, 109 n.5 (1987); *In re Grand Jury Investigation*, 903 F.2d 180, 183 (3d Cir. 1990); Wight & Miller § 106.

In Request No. 4, Plaintiff sought: (1) orders reflecting the commencement, termination, and extensions of the grand jury; (2) transcripts of the instructions and charges given to any grand jury; (3) "[a]ll [g]rand [j]ury voting records;" and (4) attendance records, "including names, times, and dates, of all [g]rand [j]urors." Dkt. 1-1 at 19 (Compl. Ex. 4). "Grand jury transcripts" are, of course, "the prototypical grand jury material exempt from disclosure under Rule 6(e)[] and are thus protected from disclosure by Exemption 3." *Borda v. Dep't of Justice, Crim. Div.*, 306 F. Supp. 3d 306, 317 (D.D.C. 2018). Similarly, for the attendance records that Plaintiff seeks, their disclosure would require revealing "'the identities of . . . jurors,'" which is also foreclosed by Rule 6(e). *See Boyd v. EOUSA*, 87 F. Supp. 3d 58, 83 (D.D.C. 2015) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)) (discussing the possibility of revealing juror identities as a benchmark test for whether withholding is appropriate). And, Plaintiff's request for grand jury voting records would also require disclosure of core, protected information. Voting records clearly constitute a "secret aspect" of the grand jury's investigation and are thus shielded from disclosure pursuant to Rule 6(e). *Lopez*, 393 F.3d at 1349 (internal quotation marks omitted); *see also Liounis v. Dep't of Justice*, No. 17-1621, 2018 WL 5817352, at *4 (D.D.C. Nov. 7, 2018) (observing that records concerning grand jury and attendance records would likely be exempt from disclosure), *rev'd in part*, *vacated on other grounds*, *Liounis v. Krebs*, No. 18-5351, 2019 WL 7176453 (D.C. Cir. Dec. 19, 2019); *Flores v. EOUSA Freedom of Info./Priv. Act Unit*, 121 F. Supp. 2d 14, 16–17 (D.D.C. 2000) (finding grand jury voting ballots, transcripts, and exhibits exempt from disclosure). For these reasons, the Court concludes that the information sought by Plaintiff in line items 2–4 of Request No. 4 is subject to

Rule 6(e) and that, accordingly, the corresponding records were properly withheld under Exemption 3.  To this extent, EOUSA is entitled to summary judgment.

The Court, however, is unconvinced—at least on the present record—that EOUSA has shown that it is entitled to summary judgment with respect to the remaining portions of Request No. 4.  Most notably, Plaintiff asked EOUSA to release "orders that reflect the [c]ommencement, [t]ermination, and any extensions of the [g]rand [juries] that heard evidence in" his case.  Dkt. 1-1 at 19 (Compl. Ex. 4).  Unlike the other grand jury information sought by Plaintiff, it is not immediately evident why such orders would "tend[] to reveal some secret aspect of the grand jury's investigation." *Abakporo v. EOUSA*, No. 18-846, 2019 WL 1046661, at *2 (D.D.C. Mar. 5, 2019) (quoting *Lopez*, 393 F.3d at 1349).  Indeed, in a case much like this one—also brought by a federal prisoner against EOUSA seeking "records about the dates on which the term of the grand jury that returned an indictment against him [were] extended"—Judge Kelly granted summary judgment in favor of the plaintiff on almost the identical question.  *Id.* at *1.  As Judge Kelly explained, in that case, the records at issue "appear[ed] to concern the grand jury's administrative procedures, as opposed to the substance of any specific investigation;" EOUSA offered "no explanation as to how [the] dates [at issue], or the orders reflecting them, would tend to reveal a secret aspect of the grand jury's investigation;" and "the limited case law on this subject does not suggest that the dates a grand jury's term was extended would tend to reveal a secret aspect of its investigation." *Id.* at *3.

In reaching this conclusion, Judge Kelly relied on the D.C. Circuit's decision in *Murphy v. EOUSA*, yet another FOIA action brought against EOUSA seeking information relating to the grand jury that indicted the plaintiff.  *Id.* at *3–4 (discussing *Murphy*, 789 F.3d 204).  In that case, the court of appeals held that EOUSA properly withheld records reflecting the specific

17

"dates and times of day the grand jury convened to consider" the plaintiff's case, but only because, on the facts of that case, the disclosure risked revealing the identity of grand jury witnesses. *Murphy*, 789 F.3d at 209. Importantly, however, the D.C. Circuit contrasted the disclosure of "the dates and times of day the grand jury [met] to consider a specific case," which risked disclosure of specific witnesses, with a mere disclosure of "when 'the grand jury's work began and ended,'" which EOUSA had voluntarily released to the plaintiff. *Id.* at 212 (quoting *Hill v. Dep't of Justice*, No. 11–273, ECF No. 29, at 8 (D.D.C. Dec. 19, 2011)). Indeed, in the *Murphy* case, EOUSA had voluntarily released records reflecting "'the date on which the grand jury was convened.'" *Id.* at 207.

Even more on point is the Third Circuit's decision in *In re Grand Jury Investigation*, where the court observed "that disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room," nor does it "violate the freedom and integrity of the deliberative process of the grand jurors;" and that none of the reasons that the Supreme Court has identified for maintaining grand jury secrecy—which are described above—"weighs against disclosure of the termination date." 903 F.2d at 182–83. Indeed, at least as of 1990, "the vast majority of United States District Courts" revealed "the commencement and termination dates of the[ir] grand jur[ies] [as] matters of public record." *Id.* at 184. The Third Circuit, accordingly, held that Rule 6(e) did not preclude disclosure of the termination date for the grand jury at issue. *Id*. at 185. Although *In re Grand Jury Investigation* did not involve FOIA, the relevant question for present circumstances is the scope of protection under Rule 6(e), which is controlling here for purposes of Exemption 3. *Labow*, 831 F.3d at 529 (defining the operative question in such situations as whether the materials withheld pursuant to Exemption 3 fell within Rule 6(e)).

To be sure, the discussion of commencement and termination dates in *Murphy* was dicta, since EOUSA had voluntarily released that information, and *In re Grand Jury Investigation* is an out-of-circuit precedent.  But a clear picture nonetheless emerges from the text of Rule 6(e) itself—which protects matters relating to a grand jury only to the extent "necessary to prevent the unauthorized disclosure of a matter *occurring before* a grand jury," Fed. R. Crim. P. 6(e)(6) (emphasis added); from these precedents; and from other precedents: records that disclose the commencement and termination dates for grand juries are protected from disclosure, if at all, only when disclosure risks revealing the substantive work of the grand jury, including the identity of grand jury witnesses or the details of a specific grand jury investigation.

Here, Plaintiff sought orders reflecting the commencement, extension, and termination of the specified grand juries.  EOUSA, in turn, offers no justification for withholding those records, beyond its categorical assertion of protection under Rule 6(e).  Dkt. 20 at 9.  This broad reliance on Rule 6(e), particularly in light of EOUSA's release of similar records in the past, is insufficient.  In short, the Court is left to wonder how, if at all, disclosure of those records would "reveal some secret aspect of the grand jury's investigation."  *Lopez*, 393 F.3d at 1349 (internal quotation marks omitted).  This does not mean, however, that Plaintiff is entitled to summary judgment with respect to these records for two reasons.  First, he has not cross-moved for summary judgment.  And, second, it is possible that EOUSA may have some (yet-to-be-voiced) rationale for withholding even this limited range of records relating to the grand juries.  If so, however, EOUSA needs to offer a declaration or other evidence explaining why disclosure would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Id.*

Finally, EOUSA's motion also falls short because it neglects altogether Plaintiff's request for "a copy of the applicable rules and regulations" of EOUSA "as provided for the FOIA/PA Acts." Dkt. 1-1 at 19 (Compl. Ex. 4); *see also* Dkt. 25-1 at 13–17 (Hudgins Decl. Ex. C, D).  It is not entirely clear what Plaintiff is seeking or that he is entitled to it.  But absent *any* argument from EOUSA, the Court cannot grant summary judgment in its favor of this unaddressed issue.

In sum, the Court will grant summary judgment in favor of EOUSA on Request No. 4 as to withholding line items 2–4 of Plaintiff's request but will deny summary judgment without prejudice as to withholding orders, if any, relating to the commencement, termination, or extension of the grand jury and the regulations sought by Plaintiff in that request.  Although the Court has already denied summary judgment on other grounds as to Request Nos. 3 and 5, the Court notes that those requests raise the same issues, and similar withholdings would, absent further explanation from EOUSA, likewise fail.

## CONCLUSION

The Court, accordingly, **GRANTS** EOUSA's motion for summary judgment, Dkt. 20, as to Request No. 1, and as to all of the grand jury materials in Request No. 4, except orders relating to the commencement, termination, and extensions of the grand jury.  In all other respects, the Court **DENIES** EOUSA's motion.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  March 25, 2021